AO 91 (Rev. 11/11) Criminal Complaint    AUSA William Dunne (312) 353-2815



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| UNITED STATES OF AMERICA | CASE NUMBER: 1:25-cr-00677 |
|---|---|
| v. | |
| FABIAS L. SHIPMAN | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about September 29, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, 922(g)(1) | knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, ammunition, namely, a 10mm caliber spent cartridge casing with a headstamp of "PPU 10mm AUTO," which ammunition had traveled in interstate commerce prior to defendant's possession of the ammunition. |

This criminal complaint is based upon these facts:

　X　 Continued on the attached sheet.

> s/ Michael Donahue (with permission BWJ)
> MICHAEL DONAHUE
> Special Agent
> Bureau of Alcohol, Tobacco, Firearms and Explosives

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: 10/17/25                                    *Judge's signature*

City and state: Chicago, Illinois         BETH W. JANTZ, U.S. Magistrate Judge
                                          *Printed name and title*

| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF ILLINOIS | ss |

# AFFIDAVIT

I, Michael Donahue, being duly sworn, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. I have been employed as an ATF Special Agent since approximately March 2020. From approximately July 2017 until my employment as a Special Agent with ATF, I served as a Task Force Officer with the ATF, while employed as a Police Officer with the Chicago Police Department. I began working as a Chicago Police Officer in approximately November 2012.

2. I am currently assigned to the Crime Gun Intelligence Center of Chicago (CGIC). The CGIC is a multi-agency, joint-force collaboration to identify, investigate and prosecute prolific firearms offenders and their sources of crime guns. As part of my duties as a Special Agent at the CGIC, I investigate violent crimes, criminal violations relating to firearms, and firearms trafficking. My current responsibilities also include the investigation of violent gun crimes and the apprehension of violent fugitives. In addition, I have participated in numerous investigations that involve the illegal purchase, trafficking, possession, and use of firearms and ammunition during, and in relation to, crimes of violence. I have received training in the area of firearms investigations, and I have participated in multiple investigations involving violations of federal firearms laws. I have recovered and examined different types of firearms

1

and ammunition and become familiar with the appearance and characteristics of the make and model of multiple types of firearms.

3. This affidavit is submitted for the purpose of establishing probable cause to support a criminal complaint charging FABIAS L. SHIPMAN with being a felon in possession of ammunition, in violation of 18 U.S.C. 922(g)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the criminal complaint charging SHIPMAN with being a felon in possession of ammunition, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that SHIPMAN committed the offense alleged in the complaint.

4. This affidavit is based on my personal knowledge and involvement in this investigation; information provided to me by other law enforcement agents involved in this investigation; my review of body worn camera footage, surveillance and security video footage, and photographs; my review of law enforcement and public records databases; my training and experience; and the training and experience of other law enforcement agents with whom I have consulted.

I. **PROBABLE CAUSE**

    A. **Summary**

5. In summary, and as set forth in more detail below, on September 29, 2025, convicted felon SHIPMAN shot two people, one of whom died as a result of the shooting. Law enforcement recovered approximately nineteen spent cartridge casings

from the scene of the shooting, including a 10mm caliber spent cartridge casing with a headstamp of "PPU 10mm AUTO," which was manufactured outside of Illinois. As a convicted felon, SHIPMAN was prohibited from possessing, among other things, ammunition. Based on my training and experience, I know "ammunition" is defined in Title 18, United States Code, Section 921(a)(17)(A) as meaning "ammunition, cartridge cases, primers, bullets, or propellant powder designed for use in any firearm."

### B. Shipman is a Convicted Felon

6. According to the records from the United States District Court for the Northern District of Illinois, SHIPMAN was previously convicted of a crime punishable by a term of imprisonment exceeding one year. Specifically, on or about July 17, 2019, SHIPMAN pleaded guilty to possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), and was sentenced to sixty months' imprisonment.

### C. September 29, 2025, Shooting of Victim A and Victim B

7. According to law enforcement reports and video surveillance footage, at approximately 3:36 p.m. on September 29, 2025, two individuals (Victim A and Victim B) were shot multiple times in an alley located by 2508 E. 78th Street in Chicago. Although Victim A survived the shooting, Victim B was killed.[1] The shooter was a black male wearing blue pants, a white t-shirt, and black baseball hat.

---

[1] The Court viewed portions of this September 29, 2025 video surveillance footage in advance of signing this complaint.



*Approximate location of the shooting*

8. As captured by video surveillance footage, screenshots from which are reflected below, the shooter arrived on scene in a black Cadillac Escalade.




The shooter walked into an alley, which was occupied by a number of other individuals. The shooter had a noticeable limp when he walked, and upon arrival to the alley, appeared to get into a verbal altercation with at least one of the individuals, whom he appeared to be familiar with. The shooter removed two firearms from his waistband and

4

proceeded to use the two firearms to shoot Victim A and Victim B. No one else on the surveillance video can be seen discharging firearms apart from SHIPMAN, as depicted in screenshots below.





5



Following the shooting, the shooter ran with a limp away from the scene The shooter, still armed with the two firearms he had just discharged, then entered back into the black Cadillac Escalade and drove away from the area.

 

6



9. According to law enforcement reports and surveillance video, shortly after the shooting, law enforcement recovered approximately nineteen spent cartridge casings from the scene of the shooting, specifically in close proximity to where the defendant SHIPMAN was observed discharging two firearms. Of these spent cartridge casings fourteen were 10mm spent cartridge casings and five were 9mm spent cartridge casings. This included a 10mm caliber spent cartridge casing with a headstamp of "PPU 10mm AUTO." An ATF interstate nexus examination analysis conducted of the recovered 10mm caliber spent cartridge casing with a headstamp of "PPU 10mm AUTO" determined that the spent cartridge was manufactured outside of Illinois.

10. According to preliminary Chicago police reports, on or about October 7, 2025, at approximately 11:20 am, Chicago Police Detectives conducted a photo array with Victim A, who was still hospitalized and under medical care. The photo array included a photograph of the defendant, SHIPMAN. Victim A did not identify anyone in the photo array. Victim A also related, in summary, that they did not know any of the people in the photo array.

**D.     Identification of Shipman as the Shooter**

11.     Based on my review of video surveillance footage of the shooting, SHIPMAN's Illinois driver's license photograph, photographs of SHIPMAN from recent police encounters, consultation with law enforcement agents who have had prior encounters with SHIPMAN, and my own personal interaction with SHIPMAN today, there is probable cause to believe that SHIPMAN was the shooter who possessed the firearms and ammunition discharged in the direction of Victim A and Victim B on September 29, 2025.

12.     According to records and information obtained from the Illinois Secretary of State's Office, below is SHIPMAN's current Illinois driver's license photograph:



13.     According to law enforcement reports, on April 22, 2025, SHIPMAN was arrested in Posen, Illinois by officers with the Posen Police Department. This arrest stemmed from an incident that occurred on February 23, 2025. Investigators were able to obtain body worn camera footage ("BWC") of SHIPMAN during the February 2025 incident and the April 2025 arrest.

14. According to Posen Police Department reports and BWC footage, on February 23, 2025, Posen Police Detective Gonzales conducted a traffic stop of a black Cadillac Escalade, bearing Illinois temporary registration 011561A22, after observing the black Cadillac Escalade[2] traveling over the posted speed limit. The black Cadillac Escalade was curbed on Albany Avenue in Posen. Detective Gonzales exited his marked police vehicle and immediately observed the front and rear passenger doors open. Two juveniles and a female had exited the vehicle. Detective Gonzales continued to approach the driver side window and heard the engine begin to accelerate. As reflected in the screenshot below from Detective Gonzales's BWC recording, when Detective Gonzales opened the driver's door, he observed that the driver was a black male with facial hair.



The driver refused Detective Gonzales's instructions and began to accelerate the black Cadillac Escalade northbound on Albany Avenue. Detective Gonzales attempted to follow the vehicle but eventually lost sight of it near the intersection of

---

[2] The Cadillac referenced in the February 23, 2025 Posen incident, was not the same Cadillac referenced in the September 29, 2025 Chicago shooting.

9

145th Street and Kedzie Avenue. When Detective Gonzales returned to where the Cadillac Escalade had been curbed, he spoke with the female who had exited the car before the driver fled. The female identified herself as K. Shipman[3] and stated the driver was her "cousin."

15. According to Detective Gonzales, Detective Gonzales searched K. Shipman's name in a law enforcement databases which listed an address on Union Avenue in Chicago, Illinois for K. Shipman. Additionally, Detective Gonzales also found SHIPMAN's name in a law enforcement database which listed that same exact Union Avenue address as K. Shipman, as it related to a prior arrest of SHIPMAN by the Chicago Police Department ("CPD") on April 3, 2023. Based on his review of SHIPMAN's April 3, 2023 CPD booking photograph (reflected below) from that arrest, Detective Gonzales identified SHIPMAN as the individual who had been driving the black Cadillac Escalade on February 23, 2025.



---

[3] Her first name anonymized in this complaint.

16. According to Posen Police reports and BWC footage, on April 22, 2025, Detective Gonzales arrested SHIPMAN outside of a residence in Posen. In connection with arrest, SHIPMAN said something to the effect of, "Just put you handoffs on—I got a dead leg." SHIPMAN was also observed to have been wearing a black in color White Sox baseball cap with a gold foil sticker affixed to the brim. Investigators recognized the baseball cap to be consistent with the one worn by the suspect during the September 29, 2025, shooting. Below are images depicting SHIPMAN wearing the White Sox baseball cap during his arrest on April 22, 2025, as well as the suspect in a consistent style White Sox baseball cap during the September 29, 2025, shooting. Also included is a screenshot of SHIPMAN's booking photograph taken following his arrest on April 22, 2025.





17. On or about October 6, 2025, ATF showed Detective Gonzales the video surveillance footage from the September 29, 2025 shooting, described above. Based on Detective Gonzales's prior encounters with SHIPMAN earlier this year, his familiarity with SHIPMAN's face, physical features, and distinct limp when he walked, Detective Gonzales also identified SHIPMAN as the shooter depicted in the video surveillance footage from the September 29, 2025 shooting.

18. ATF Intelligence Research Specialist Daniel Golden has had prior in-person interactions with SHIPMAN when he was employed as a Chicago Police Officer, specifically during an encounter with SHIPMAN that occurred on or about June 12, 2019 at an address on Muskegon Avenue in Chicago, Illinois. According to Specialist Golden, SHIPMAN suffered a permanent hip injury as a result of a car crash and he walked with a noticeable leg limp. Specialist Golden reviewed the surveillance footage from the September 29, 2025 shooting. Based on Specialist Golden's prior encounters with SHIPMAN, his familiarity with SHIPMAN's face, physical features, and distinct limp when he walked, Specialist Golden also identified SHIPMAN as the shooter depicted in the video surveillance footage from the September 29, 2025.

19.     Yesterday, I personally met with SHIPMAN in Markham, Illinois. I observed SHIPMAN's face, physical features, and viewed him walk with a limp in the same manner as the shooter in the video surveillance from September 29, 2025, as described above. Based on my personal observations, along with all of the other videos and photographs I have reviewed of SHIPMAN in this investigation, I have also identified SHIPMAN as the shooter depicted in the video surveillance footage of the September 29, 2025 shooting.

## II.    CONCLUSION

20.     Based on the foregoing, there is probable cause to believe that on or about September 29, 2025, FABIAS SHIPMAN, knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, ammunition, namely, a 10mm caliber spent cartridge casing with a headstamp of "PPU 10mm AUTO," which ammunition had traveled in interstate commerce prior to defendant's possession of the ammunition.

s/ Michael Donahue (with permission BWJ)

MICHAEL DONAHUE
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SWORN TO AND AFFIRMED by telephone October 17, 2025.

HONORABLE BETH W. JANTZ
United States Magistrate Judge

13